RECEIVED

AUG 12 2021

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PATRICIA A. GRANT, PH.D., | § | |
| Plaintiff, | § | CASE NO. |
| v. | § | |
| TEXAS STATE ATTORNEY GENERAL | § | SA21CA0761FB |
| OPEN GOVERNMENT RECORDS, AND | § | |
| CONSUMER PROTECTION DIVISION, | § | |
| TEXAS HEALTH AND HUMAN SERVICES COMM. | § | |
| DEPARTMENT OF AGING AND | § | |
| DISABILITY SERVICES OFFICE OF THE | § | 3 PARTIES |
| LONG-TERM CARE OMBUDSMAN | § | SEPARATE |
| PROGRAM OPEN RECORDS DIVISION, | § | JURY TRIALS |
| PATRICIA DUCAYET; THERESA THOMSON | § | DEMANDED |
| CYNTHIA BOYUM, BEXAR COUNTY AREA | § | |
| AGENCY ON AGING OMBUDSMAN PROGRAM | § | |
| TX DEPARTMENT OF FAMILY PROTECTIVE | § | |
| SERVICES ADULT PROTECTIVE SERVICES | § | |
| SANDRA MARTINEZ; CORYELL COUNTY | § | |
| MEMORIAL HOSPITAL (CORYELL | § | |
| HEALTH) – DAVID K. BYROM; REGENT | § | |
| MANAGEMENT SERVICES L.P. – REGENT | § | |
| CHARLES D. MILOS JR., STEVEN E. | § | |
| CONNER; REGENT CARE CENTER OF OAKWELL | § | |
| FARMS A/K/A REGENT CARE CENTER OF SAN | § | |
| ANTONIO II LIMITED PARTNERSHIP D/B/A | § | |
| REGENT CARE CENTER OF OAKWELL FARMS, | § | |
| REGENT CARE CENTER OF SAN ANTONIO II, | § | |
| LIMITED PARTNERS, REGENT CARE GENERAL | § | |
| PARTNER, INC., REGENT CARE OPERATIONS | § | |
| GENERAL PARTNER, INC., AND REGENT CARE | § | |
| CENTER OF SAN ANTONIO, REGENT CARE | § | |
| CENTERS OAKWELL FARMS - ROBERT KERR; | § | |
| DEBORAH SEABRON, STANLEY GRANT | § | |
| HAROLD GRANT, TERRY LUNA, BERTHA L. | § | |
| FRANKLIN, DISCOVERABLE OTHERS | § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT

Honorable Judge, plaintiff pro se, Patricia A. Grant, Ph.D., 1001 Cooper Point Rd, #140-231, Olympia, WA 98502, appears filing her Social Security Healthcare False Claims Elder Abuse Whistleblower Retaliation, Defamation, and State Complicit Civil Rights Violations Complaints:

# PARTIES.

1. Plaintiff: Ph.D. (2012), 1 Lt. USAF Medically Retired Disable Veteran (1984), multi-protected class U.S. citizen – 1001 Cooper Point Rd, SW# 150 -231 Olympia, WA 98502.

2. Defendants:

| State Defendants |
|---|
| TX State Atty. Gen. Open Government Records and Consumer Protection Divisions – Attn: Associate Deputy AG for Civil Litigations, Daniel Price Sr., State Office Bldg., 8th Floor, 209 West 14th St Austin, TX 78701 |
| Patricia Ducayet –Office of the State Long-Term Care Ombudsman &, Depart. Of Aging & Disability Services Health and Human Services, MC-W250, PO 149030, Austin, Texas 78714 |
| Theresa Thomson, Former Director- Bexar County Area Agency On Aging Ombudsman Program - 2700 NE Loop 410. Suite 101. San Antonio, TX 78217. |
| Sandra M. Martinez - TX Department Of Family Protective Services Adult Protective Serv. – 3635 S.E. Military Dr., San Antonio, TX 78223. |
| Cynthia Boyum, Director - Bexar County Area Agency On Aging Ombudsman Program - 2700 NE Loop 410. Suite 101. San Antonio, TX 78217. |

| Nursing Home Defendants |
|---|
| David K. Byrom - Coryell County Memorial Hospital, Coryell Health, 1507 W. Main Gatesville, TX 76528 |
| Steven E. Conner & Charles D. Milos Jr.- Regent Management Services L.P. - 2302 Post Office St # 402, Galveston, TX 77550 |
| Robert Kerr, Director & Bertha L. Franklin- Nurse Aide Hall Three<br>Regent Care Center Of Oakwell Farms A/K/A Regent Care Center Of San Antonio II Limited Partnership D/B/A Regent Care Center Of Oakwell Farms, Regent Care Center Of San Antonio II, Limited Partners, Regent Care General Partner, Inc., Regent Care Operations, General Partner, Inc., And Regent Care Center Of San Antonio, Regent Care Centers Oakwell Farms -<br>8501 Laurens Ln, San Antonio, TX 78218 |

| Family Defendants |
|---|
| Stanley Grant - 2803 Wild Cherry, Schertz, Tx 78154 |
| Harold Grant - 11707 Vance Jackson Rd #906, San Antonio, Tx 78230 |
| Debra Seabron - 7311 Sawgrass, San Antonio, Tx 78244 |
| Terry Luna -385 Longview Dr. San Antonio, TX 78220 |

# I. JURISDICTION.

2. This court has jurisdiction under:

A) *28 U.S.C. § 1331.* Federal question, B) Social Security ("SSA") Act Titles: II. Federal Old-Age, Survivors, and Disability Insurance Benefits, VI. Temporary State Fiscal Relief, XI. General Provisions, Peer Review, and Administrative Simplification, and XVIII. Health Insurance for the Aged and Disabled, C) Health Care Fraud *18 U.S. Code § 1347*, D) False Claims Act - *31 U.S. Code § 3729 (a) (1)(A)(B)(G)(3) - § 3733* Healthcare SSA Whistleblower and Retaliation Protection ("qui tam statute"), E) The Fraud Enforcement and Recovery Act - *28 U.S.C. § 2461* - Judiciary and Judicial Procedure Mode of recovery, F) *42 U.S. Code § 1395i–3* - Requirements for, and assuring quality of

care in, skilled nursing facilities, **G)** Affordable Care Act -Fraud-and-Abuse Provisions, **H)** Healthcare Reform Act -Fraud-and-Abuse Provisions, **I)** *42 USC 18001* - Patient Protection Affordable Care Act, **J)** Public Health and Welfare - Anti-Kickback Statute *42 USC § 1320 a-7b (b)*, **K)** Freedom of Information Act ("FOIA") *5 US Code § 552 et. seq.*, **L)** Texas Government Codes *552 et. seq.* – Public Information ("PIA"), **M)** TX Hum. Res. Codes Chap 48 et. seq, **N)** U.S. Constitution First Amendment– Right to petition federal government redress, **O)** U.S. Constitution Sixth Amendment - Confrontation Clause, **P)** U.S. Constitution Fourteenth Amendment ("14th")– Equal Protection Clause, **Q)** American Disability Act ("ADA") - *42 U.S.C. § 12101, et seq.* Title II- III, **R)** TX Admin. Code Chap 353 Rule *§353.608*-Minimum Payment Amounts Program ("MPAP"), **S)** Quality Initiative Payment Program ("QIPP") - 42 Code of Federal Regulations *§438.6(c)* -Medicaid Fraud Prevention Act- TX Hum. Res. Code *§ 36 et. seq*, **T)** Unlawful Acts- TX Hum. Res. Code *§ 36.002*, **U)** Investigation and Protective Services for Elderly persons and Persons with Disabilities- TX Hum. Res. Code *§ 48 et. se.*, **V)** Deprivation of rights under color of law-*18 U.S. Code § 242*, and **W)** *42 USC § 1983*-Civil action for deprivation of rights.

## STANDING.

3. Plaintiff has state court and federal legal standings: **A)** Texas State District Court[1] and Fourteenth Court of Appeal ("14th COA")[2] grants plaintiff Declaratory and Injunctive relief (Exhibit 1), **B)** Texas Government Code, Chapter 552 -Texas Public Information Act ("PIA"), covered under the U.S. Freedom of Information Act ("FOIA"), denies State defendants' "Immunity"[3], **C)**14th COA "Complicit Elder Abuse and ADA Civil Rights Violations" remand with Texas Travis District Court's continuous hearing denials[4], **D)** U.S. First, Sixth, and 14th Amendment's violations causing plaintiff irreparable loss and harms (wealth, health, and other), and **E)** Social Security Act Healthcare Fraud Whistleblower Program (deadly defamation of character – vilification and police involved endangerment), and Other direct and indirect federal denied civil rights advocacy protection harms.

## II. VENUE.

4. Venue is proper *pursuant* to *28 U.S.C. § 1391* because the events giving rise to this complaint happened in this district.

---

[1] TX Travis County District Court 361st September-October 2020, *Grant v. OAG* D-1 GN 18 002178 Hearings.
[2] Exhibit 1. 14th COA Opinion Dec 17, 2019, Grant v. OAG, et. al. 14-18-00677-CV.
[3] *Ibid* Footnote 1.
[4] Ibid footnote 1. February 2021, *Grant v. OAG* D-1 GN 18 002178 Court Order.

# III. STATEMENT OF FACTS.

## 5. Family and Nursing Defendants.

A. November 2015, Defendants Regent Management Services L.P. ("Regent"), managers of separately owned and operated nursing defendant Regent Care Oak well Farms, settled with the U.S. Attorney's Office, HHS-OIG, HHS-OIG (Office of Counsel to the Inspector General), TX Atty Gen., and Assist U.S. Atty's Office for the Southern District of TX for violating U.S. Anti-Kickback Statute for swapping arrangements, offering, paying, soliciting, or receiving to induce referrals of items or services covered by federal health care programs, including Medicare and Medicaid. Regent established a corporate integrity agreement (CIA) with HHS-OIG, obligating them to undertake a substantial five-year internal compliance reform (Exhibit 2).[5] November 2014-June 20, 2020[6], State and Regent defendants breached the CIA by allowing the nursing and family defendant's joint healthcare fraud and civil right violations (elderly institutionalization manipulation, fraudulent social security eligibility diagnoses, denying plaintiff's father medical records release requests, and denial of plaintiff's filial military and VA elderly dependent care benefits to prevail.

B. December 2014-June 20, 2020, Implementing and utilizing belittling, humiliating, and police involved endangerment tactics (public harassment, slandered, deadly defamation, discrediting, and character assassination); nursing and family defendants concealed their ongoing SSA fraudulent acts (billings, medical diagnoses, hiding of financial assets, other), healthcare kickback service swapping and/or personal favors law violations.

C. April-May 2015, nursing and family defendants falsely reported Elder Abuse (Exhibit 3)[7] against plaintiff. September 2015- June 20, 2020, knowing the state reported no elder abuse against plaintiff, nursing, and family defendants, relied on an alleged open APS case against plaintiff to confine her father, deny his rights, and their application of other federal insurance fraud concealment acts.

D. November 2015, December 2018, February 2019, Plaintiff, Plaintiff's Father, Personal Friend, and Ombudsman met literally with nursing and family defendant's public personal and hostile attacks to control and ban plaintiff's visitation rights, denying her right to spend time and or render plaintiff's father requested, required, and needed help; further attempts of criminally concealments.

---

[5]Exhibit 2– November 30, 2015, Article "Skilled Nursing Facility Company Agrees to Pay More Than $3 Million to Resolve Kickback Allegations."
[6] Ongoing substandard care and sepsis death of Burnett Grant (Plaintiff's father).
[7]Exhibit 3 – September 11, 2015, TX Dept Adult Protective Services Ltr. October 8, 2020, plaintiff learns of reported Elder Abuse findings held against her since May 2015 -*Grant v. OAG* D-1 GN 18 002178 – Hearing defendants OAG release.

E. January 2015- June 20, 2020, State court records and denied PIA information requests evidence of plaintiffs, inexhaustible state elderly protection "due diligent" denied, by state defendants.

F. October 2019, Probate Court Guardian Ad litem[8] concludes non-guardianship, denies family and nursing defendants 2015, Alzheimer's and/or Dementia, diagnoses that served as these defendant's December 2014, and January 2015, permanent nursing home institutionalization of plaintiff's father.

G. May-June 20, 2020, plaintiff's father, a person whose adult life dependent on his maintaining his physical health and wellness, rapidly deteriorated from approximate 85-90% mobility needing some assistance with daily care, to a bed ridden fractured hip (caused from roommate beating), repeated failed diabetic foot and bedsore treatment, intravenous feeding, isolated shell of a person dying from repeated back-to-back severe sepsis toxicity.

6. **State Defendants.**

A. January 1, 2015-October 8, 2020, plaintiff's legal due diligent includes state protective agencies, judicial courts (county, state, federal), TX 14th Court of Appeal's FOIA and Complicit Civil Rights violation remand, with finalization now before said Court: 1) Civil Rights Violation – Complicit disable and elder civil right violation harms, 2) Negligence - Failure to protect, inform, render aide, and terminate elderly fraudulent institutionalization.

B. January 1, 2015, plaintiff, an Elder Abuse Reporter and May 2015, falsely alleged Reportee, filed two Texas Adult Protective Service ("APS") phone hotline complaints.[9] Defendant Sandra Martinez, assigned investigator for both plaintiff's complaints and the allegations against her, ignored plaintiff's numerous phone calls and fail to interview her. October 8, 2020, through judicial hearings and release of information, plaintiff learns her reporting information, although a known matter of legal dispute (2015, 2018, and 2020), was destroyed by the defendants.

C. September 2020, state district court hearing[10], state defendant's summary judgement exhibits support plaintiff's claims of duty negligence and inadequate investigation with non-responses to plaintiff's claims and requested support for elder abuse, substandard care, and nursing home fraud affirming plaintiff's claims of elder abuse civil rights violations complicitness (January 2015-

---

[8] Bexar County Probate Court 1 – Interest of Burnett Grant- Case# 2019-PC-0867.
[9] Plaintiff's Dec 2014-Jan 2015, TX Dept Family Protective Services Elder Abuse Hotline Phone Reporting - Intake # #6560164-Bonnie-Employee ID# 1386, and Intake #65604374-Darcie- Employee ID#1073.
[10] September 15-16, 2020, Hearing, TX Travis County District Court 361st – OAG defendants, Summary Judgement Exhibits A-E *Grant v. OAG* D-1 GN 18 002178 – Plaintiff submission during case conferencing.

Present):1) January-May 2015, plaintiff's fraudulent elderly institutionalization resolution failed due diligence with family defendants, 2) June 2015, ignoring plaintiff's investigation requests to OAG defendant's Consumer Protection Division, as nursing defendants are corporate entities (foreign, out-of-Texas State, other), and 3) June 2015-present, plaintiff's APS elder abuse Reporter and alleged Reportee Public Information Act ("PIA") requests denials and alleged records destruction ("obstruction of justice").

D. November 2015-2018, plaintiff files federal elder abuse father-daughter advocacy civil rights violations, appeals to fifth circuit. Lack of Standing denied court entries.

E. July 2018 -December 2019, plaintiff files her PIA civil rights violations[11], and appeals OAG biased civil hearing and case remanded[12].

F. January 2015- February 2021, plaintiff's PIA production of her Bexar County Ombudsman elderly protection requests, investigations, and complaints findings, and defendant Martinez's APS elder abuse Reporter/Reportee classified information; continues family defendant's retaliation, defamation concealment of plaintiff whistleblower's reporting the nursing home's continuous and ongoing SSA healthcare financial crimes.

G. January 2015- October 8, 2020, State defendant's Court admissions and submissions[13]; affirms plaintiff's unheard claims of complicit civil right violations and failure of duty to protect her, APS Abuse Reporter/alleged Reportee, and her father, an elderly abused (mental, physical, emotionally) person fraudulently institutionalized for gains (personal, financial, business, other).

## IV. CAUSE OF ACTION.

7. **Claim I**. December 2014-June 20, 2020, Nursing and Family Defendants violated Health Care Fraud 18 USC § 1347, and False Claims Act - 31 USC § 3729 (a) (1)(A)(B)(G)(3), Social Security ("SSA") Act Titles - II. Federal Old-Age, Survivors and Disability Insurance Benefits, VI. Temporary State Fiscal Relief, XI General Provisions, Peer Review, and Administrative Simplification, and XVIII. Health Insurance for the Aged and Disabled, Affordable Care Act Fraud-and-Abuse Provisions, Healthcare Reform Act Fraud-and-Abuse Provisions, and *42 USC 18001* - Patient Protection Affordable Care Act - When on November-December 2014, these defendants collaborated immediate nursing home institutionalization for gains (personal, financial, business, other) through the coercion

---

[11]*Grant v. OAG* D-1 GN 18 002178 – Travis County TX District Court.
[12] *Ibid.* Footnote 1.
[13] *Ibid.* Footnote 11.

and manipulation of plaintiff's father Burnett Grant, an elderly person rehabilitating from a medication induced minor stroke. Defendants based and maintained their false medical admission claims of Early Onset Alzheimer, Dementia, Inability to Rehabilitate, and Diabetes, although these medical conditions were not covered under Social Security Medicare and Medicaid nursing home institutionalization. Additionally, plaintiff's father's personal assets at the time of admission exceeded these federal insurances requirements in violation of social security five-year lookback legal requirements.

8. **Claim II**. December 2014-June 20, 2020, nursing and family defendants violated the Public Health and Welfare - Anti-Kickback Statute, Deprivation of rights under color of law-*18 USC § 242*, *42 USC § 1983* -Civil cause of action for deprivation of rights, and the American Disability Act ("ADA") - *42 U.S.C. § 12101, et seq.* Title II- III, taken joint with the stigma and bias discrimination thereof. 2015, nursing defendant Kerr following and supporting the deceptions of defendant Seabron's egregiously violated Mr. Grant's civil rights, including but not limited to i) Subjecting Mr. Grant to the family and nursing defendant's hostile, violent, and deadly police involved endangerment, as to deny his Ombudsman's release of medical information to plaintiff, ii) Nursing defendants with family defendant's fear, bullying, and intimidation tactics silencing and denying plaintiff's father request for relief from medical malefices (substandard care, direct and indirect violence, and harm, and against his will nursing home confinement, iii) Public humiliation with involvement and threats of police endangerment, and iv) denial of state defendant TX Long-term-Care Director Ducayet's November 2015, pre-arranged father and daughter nursing home visitation outings, defamation and vilifications retaliatory acts covered under, Healthcare Social Security Whistleblower Retaliation Protection ("qui tam statute") laws.

9. **Claim III**. January 2015 – June 20, 2020, Nursing and family defendants relies on untruths, biasness, stigmatic attributions, and deadly stereotypes of plaintiff's military medical retirement (1984) and disable veteran status. Additionally, these defendants manipulated others to obtain false hearsay allegations to discredit and defame plaintiff's intelligence (cognitive, emotional, behavioral, other) to deny her constitutional rights protected under the American Disability Act ("ADA").

10. **Claim IV**. January 2015 – June 20, 2020, Nursing and Family defendants denied plaintiff right to ensure her father's receives military and veteran dependent, filial (daughter) obligations of personal care, insurances, and financial benefits, in addition to baseless and illegal denial of rights to free visitations care and outing void family, nursing staff, and police endangerment.

11. **Claim V.** State Defendant's Complicit Healthcare Fraud and Civil Rights Violations: January 1, 2015-present, Plaintiff's plethora of requests for civil rights protection from state defendants remains overridden in favor of corporate healthcare defenses and civil rights complicitness. In lieu of legal required state fines and closures. State defendants ensures corporate capital investments gains (monetary, personal, business, other), over nursing defendants failure of duty, accountability, and legal liability; sanctioning the egregious human quality of life harms (physical, emotional, mental, other), unlawful elder civil rights violations, and harms to plaintiff and her institutionalized, now deceased, father: **A)** January – November 2015, Nursing Defendant's Federal Government Anti-trust investigation, starts or previously started, **B)** January 2015, Plaintiff places her elder abuse complaint and against family defendants, **C)** A Time in 2015, under TX Admin. Code Chap 353 Rule §353.608-Minimum Payment Amounts Program ("MPAP"), TX HHS grants Regent Care Oakwell Farm San Antonio, TX defendants' government hospital immunity, under The Coryell County Memorial Hospital Authority, Gatesville, TX[14] voiding their duty and liabilities, covered under 42 U.S. Code § 1395i–3 - Requirements for, and assuring quality of care in, skilled nursing facilities standards, **D)** June 2015-present, under Freedom of Information Act ("FOIA") 5 *U.S. Code § 552 et. seq.*, and TX Gov. Codes *552 et. seq.* – Public Information Act ("PIA"), plaintiff files her APS Reporter/Reportee investigations, and Regent Care defendants "Preference Law" release of information requests. After December 2019, 14th COA case remand, October 2020 - present, plaintiff receives her June 2015, PIA requests in part and denied in part[15], **E)** A point in 2016, Quality Initiative Payment Program ("QIPP") - 42 Code of Federal Regulations §438.6(c), state defendants implement incentive funding for corporate quality care and capital investments gains, in lieu of healthcare failed duty accountability and legal liabilities, as covered under Medicaid Fraud Prevention Act- Tex. Hum. Res. Code § *36 et. seq,* Investigation and Protective Services for Elderly persons and Persons with Disabilities - TX Hum. Res. Code § *48 et. seq*, American Disability Act ("ADA") - *42 U.S.C. § 12101, et seq.* Title II- III, Unlawful Acts - TX Hum. Res. Code § *36.002*, and other governing bodies of healthcare fraud and civil rights laws protecting plaintiff and her father. 12. 2015-present, State defendants' responses to plaintiff request for help and due diligence, sanctioned corporate nursing elderly and disabled civil rights violations, allowing death, suffering, and other egregious civil harms for capital gains. Case

---

[14]Congress and President Obama Administration's MPAP funding legislation was for rural nursing homes in local hospital districts. July 1, 2020, U.S. Census San Antonio, TX, a major metropolitan city, is the 7th most populous incorporated city with about 332 miles distance from Gainesville, TX.

[15] Grant v OAG et. al (2010) final rulings.

defendant's deprived plaintiff and her father's rights violating their duty of public trust, under the color of law-*18 U.S. Code § 242, 42 USC § 1983*-Civil action for deprivation of rights, U.S. Const. Sixth and Fourteenth Amendments.

## V. CONCLUSION.

If not for the nursing and family defendant's healthcare fraud concealment, retaliatory malice, taken with states defendant's egregious negligence and complicitness denying their duty to protect the rights of the elderly and those with mental health labels' quality of life; plaintiff and her father, her best friend, would have enjoy her filial duties benefiting their last years together. Instead, he suffered, and she continues to suffer from the continuous and undue irreparable loss and harms of defendants supporting illegal corporate capital investments gains (personal, financial, business, government, other).

## VI. REQUEST FOR RELIEF.

13. Declaratory and Injunctive pursuant TX PIA and Federal FIOA's Production of Documents:

A. 2015- Present, State Defendant's classified APS elder abuse, that arose out of allegations against or directly/indirectly involving plaintiff and where her name is literally written or implied, or not. These are the alleged investigation records of criminal allegations involving and impacting plaintiff and her father for over five years, as recorded in the defendant's September 16, 2020, Travis District Court Hearings Summary Judgement Motion's On Camera Exhibit E, July 2018, Travis District Court Hearing's unheard and reviewed classified documents, and December 2019, TX 14th COA remand documents request rehearing.

B. 2015-Present, All of State Defendants' Sandra Martinez, Cindy Boyum, Patricia Ducayet, Bexar County TX Office of the Ombudsman, State of Texas Long-term Care San Antonio, TX Department of Family Protective Services Office, Office of TX Health and Human Resources, and all TX State Agency and Office of Attorney General Records Divisions:

1) All information directly/indirectly pertaining to plaintiff with or with her Burnett Grant by name or not.

2) All information directly/indirectly pertaining to plaintiff with or without Burnett Grant by name or not, arising out of any criminal Anti-trust, kickbacks, elder abuse, medical treatment, guardianship, visitation, other) complaint and/or investigations.

3) All information directly/indirectly pertaining to plaintiff with or without Burnett Grant by name or not, arising out of any civil (personal care, visitation, guardianship, elder abuse, harms, other) investigations.

14. **Compensatory Damages:**

A. 2015- present, case defendants pay three times all of plaintiff's county, state, and federal courts appearance costs, fees, printing, postage, and other related costs with financial reimbursement to the Courts for their waived costs.

B. November 2018 – until court resolution case defendants pay plaintiff for each day of her dual state status living status; calculated as each calendar year's federal government lodging, meals, and incidental per diem rates.

C. 2015- until case resolution, other court related costs, fees, and expenses.

D. Prior 2015- present, plaintiff receives and keeps her father assess: 1) House- 385 Longview Dr., San Antonio, TX, 2). La Grange, TX – Land (8.305 acreage), Oil, Gas, other Minerals Inheritance, 3) Guns (Antiques, Other), 4) Jewelry (Gold, Rings -Male and Female), and other discoverable assets, and/or their cash value that family members hide, sold, or taken, as not to disclose in accordance to federal and state nursing home institutionalization healthcare insurance laws.

15. Punitive/Exemplary Damages: January 2015-until case resolutions, Ten times sum total of Compensatory Damages for the fraud, malice, defamation, abuse, endangerment, and gross negligence harms (Mental Emotional Health, Wealth).

## VII. DEMAND FOR JURY TRIAL.

16. Plaintiff hereby requests three separate jury trials on all issues raised with three separate arguments, pretrial preparations, and conferencing events.

## VIII. PRAYER.

17. Plaintiff prays this Court recognize the inhumane treatment she and her father received and grant her justice.

August 12, 2021.

Respectfully Submitted,

PATRICIA A. GRANT, PH.D., *PRO SE*
1001 Cooper Point Rd., SW #150-231
Olympia, Washington 98502
drpatriciaagrant@gmail.com

EXHIBIT 1

# EXHIBIT 1

EXHIBIT 1

**Affirmed in Part; Reversed in Part; Remanded; and Memorandum Opinion filed December 17, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00677-CV

---

### PATRICIA A. GRANT, PH.D., Appellant

### V.

### TEXAS STATE ATTORNEY GENERAL, OPEN GOVERNMENT RECORDS DIVISION; AND TEXAS HEALTH AND HUMAN SERVICES DEPARTMENT OF AGING AND DISABILITY SERVICES – OFFICE OF THE LONG-TERM CARE OMBUDSMAN PROGRAM OPEN RECORDS DIVISION, Appellees

---

**On Appeal from the 53rd District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-18-002178**

---

# MEMORANDUM OPINION

Plaintiff Patricia A. Grant appeals from the district court's order granting the plea to the jurisdiction and the motion to dismiss filed by the defendants the Office of the Attorney General of Texas ("the OAG") and the Texas Health and Human

Services Commission ("HHSC"; collectively, "the Agencies").[1] We agree with Grant that the Texas Public Information Act grants her standing to pursue, and waives the Agencies' sovereign immunity from, her claims for declaratory and injunctive relief for the Act's violation. We therefore reverse the dismissal of Grant's requests for declaratory and injunctive relief for the Agencies' alleged violations of the Texas Public Information Act. Grant has not challenged the portion of the judgment granting the motion to dismiss as it pertains to her claims that the Agencies are complicit in elder abuse and in civil-rights violations; thus, we leave that part of the judgment intact. In all other respects, we affirm the trial court's judgment, and we remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Appellant Patricia A. Grant sued the Agencies based on their failure to produce certain documents in response to her open-records requests under the Texas Public Information Act ("the Act"). She also pleaded that the Agencies' alleged violations of the Act make them complicit in elder abuse and "family advocate civil rights law violations." Pursuant to the Act, she pleaded for unspecified injunctive relief, for a declaration that the Agencies have violated the Act, and for a writ of mandamus compelling the Agencies to produce certain documents. Grant further pleaded for various other declarations of her rights under unidentified provisions of the state's constitution and laws. In addition, she asked the trial court to intervene to remedy or prevent elder abuse, "hostile nursing facility environments," manipulation and coercion of elderly residents of nursing homes, medical negligence, "elderly fear of police involvement," "failed ombudsman nursing facility residency civil rights

---

[1] Despite the style of the case, the defendants are the OAG and HHSC, not specific departments, offices, or divisions within those agencies.

protection," and continuing endangerment of a nursing-facility resident's health and well-being.

*Did not have *[handwritten: objection to Plea]*

Of the claims Grant pleaded in the trial court, she challenges on appeal only the dismissal of her claims for declaratory and injunctive relief for the Agencies' alleged violation of the Act. We therefore describe her factual allegations only as to those claims.

## A. Grant's Claims Against the OAG

Grant alleges that she requested information from the Department of Family & Protective Services ("DFPS") related to certain elder-abuse complaints, which she identified by complaint number, case number, or by the identity of the alleged victim or perpetrator. Her records request was denied. According to Grant, the OAG unconstitutionally granted DFPS "a waiver of plaintiff's release of information waiver request" and failed to reply to her "rebuttal letter." She contends that the OAG's failure to revoke the waiver violates the Act.

## B. Grant's Claims Against HHSC

Grant similarly alleges that HHSC violated the Act. She alleges that she made open-records requests to HHSC's predecessor[2] in June and September of 2015, but she does not identify the documents she requested. She asserts that HHSC finally responded on March 16, 2016, "without [an OAG] waiver, requested documents, or cost quotes." She seeks an order compelling HHSC to produce "all 61 pages as handwritten on an envelope enclosed with defendant's March 16, 2016 letter." She

---

[2] Grant directed these requests to the Department of Aging and Disability Services, but before this suit was filed, the legislature transferred that department's functions to the Health and Human Services Commission and abolished the Department. *See* TEX. GOV'T CODE ANN. §§ 531.02001–.0207. As the Department's successor, HHSC answered the claims that might otherwise have been directed to DADS. To avoid confusion, we include the former Department of Aging and Disability Services in our references to HHSC.

also asked the trial court to require HHSC to produce to Grant "any [and] all Ombudsman information," including investigations, incident reports, and complaints, together with "any and all other court admissible information not listed, as the information pertain[s] directly or indirectly to" a particular nursing-home resident.

## C.    The Agencies' Response

The Agencies filed a plea to the jurisdiction combined with a motion to dismiss under Texas Rule of Civil Procedure 91a. They argued in their plea to the jurisdiction that (1) Grant lacks standing to assert claims on behalf of a third party, (2) the Agencies have sovereign immunity from suit and from monetary damages,[3] (3) Grant's requests for information under the Texas Public Information Act are considered withdrawn as a matter of law, and (4) a claim under the Uniform Declaratory Judgments Act does not confer jurisdiction on the trial court. The Agencies moved to dismiss under Texas Rule of Civil Procedure 91a on the grounds that (1) they have sovereign immunity from suit; and (2) Grant alleged "complicit ongoing elder abuse and advocate civil rights violations" but "allege[d] too few facts to demonstrate a viable, legally cognizable right to relief." The trial court granted both the plea and the motion and dismissed Grant's claims with prejudice.

In her first two issues, Grant contends that she has standing to sue under the Texas Public Information Act, which also waives the Agencies' immunity from suit for declaratory and injunctive relief for violating the Act. Grant's five remaining issues concern matters that are not properly before us.

## II. Grant Has Not Abandoned Her Appeal

---

[3] Grant did not plead for monetary damages, but in her response to the Agencies' plea to the jurisdiction, she asserted that she is entitled to compensatory and punitive damages.

As a threshold issue, the Agencies assert that Grant has abandoned her appeal by failing to address the grounds on which the district court dismissed her claims. According to the Agencies, these grounds are that (1) Grant lacks standing, (2) the Agencies have sovereign immunity from suit, and (3) the records sought are confidential.

The Agencies are mistaken. Grant addresses standing and sovereign immunity in her appellate brief, and the allegedly confidential nature of the records she seeks are not at issue in this appeal for two reasons.

First, confidentiality of the records is not jurisdictional. The Agencies themselves characterize confidentiality as a "defense" to the failure to disclose.[4] Confidentiality is relevant to the merits of Grant's claims that the Agencies have violated the Texas Public Information Act, and because "[t]he purpose of a plea to the jurisdiction is to 'defeat a cause of action without regard to whether the claims asserted have merit,'"[5] the Agencies appropriately did not raise this merits argument in their plea to the jurisdiction.

---

[4] More accurately, confidentiality is a reason to withhold information from the general public. Nevertheless, some confidential information is available to certain requestors based on the procedural history of the request or the requestor's connection to the information sought. *See, e.g.*, TEX. GOV'T CODE ANN. § 552.302 (absent a timely request for an OAG opinion that the requested information may be withheld, the information is presumed to be public and must be released absent a compelling reason to withhold it); *id.* § 552.023(a) (a person has a special right of access to information related to that person, even though laws intended to protect that person's privacy interests protect the information from public disclosure); *id.* § 552.307 (if the person has a special right of access, the governmental body must either release the information within ten business days or request an OAG opinion that the information is exempt from disclosure); 40 TEX. ADMIN. CODE § 705.7107(1)(A), (3), (4) (after appropriate redactions, certain Adult Protective Services case records requested in writing must be made available to specific requestors, which may include a living adult APS client, a person interviewed as part of an APS investigation, or an alleged or designated perpetrator of abuse, neglect, or exploitation of an APS client).

[5] *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)).

Second, although certain merits arguments could be addressed through a motion to dismiss under Rule 91a, the Agencies did not move for dismissal on the grounds that Grant sought confidential records. To the contrary, they challenged Grant's claims under the Act only on the jurisdictional ground of sovereign immunity. The remainder of the Agencies' motion to dismiss was directed to Grant's claims of "complicit ongoing elder abuse and advocate civil rights violations," and the Agencies challenged those claims on the ground that Grant "alleges too few facts to demonstrate a viable, legally cognizable right to relief." Confidentiality was never mentioned, and the Agencies could not raise a new ground at the hearing. *See* TEX. R. CIV. P. 91a.2 ("A motion to dismiss . . . must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both."). Further, the trial court's judgment indicates that it did not consider the Agencies' assertions at the hearing that the records requested from DFPS are confidential.[6] The trial court instead stated in the judgment, "After due consideration *of the law and the filings* of parties, the Court finds said motion meritorious." The record therefore does not show that the trial court erroneously treated the confidentiality argument as jurisdictional or considered arguments raised for the first time at the hearing on the motion to dismiss.

### III. GRANT'S APPEAL AS TO HHSC IS NOT MOOT

The Agencies also imply that Grant's appeal of the dismissal of her claims against HHSC under the Act are moot. *See Kessling v. Friendswood Indep. Sch. Dist.*, 302 S.W.3d 373, 384 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (claims regarding fulfilled record requests are moot). They state that "from [Grant's]

---

[6] The Agencies did not contend that the records requested from HHSC—which were not described—are confidential.

argument it seems she received the documents requested from HHSC .... To the extent she is requesting documents, it appears she already has them."

There is no support for this inference. Grant refers in her brief to the government records that she "diligent[ly] and persistently seeks" and to her "continuously denied government records requests." Although we are free to consider evidence outside the record showing that we lack jurisdiction over this part of the appeal due to mootness,[7] HHSC has offered none. We therefore consider Grant's appeal on the merits.

## IV. THE PLEA TO THE JURISDICTION

We review de novo the trial court's grant of a plea to the jurisdiction. *See Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). We first look to the pleadings to determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Id.* If the issue is one of pleading sufficiency, the plaintiff should be afforded the opportunity to amend unless the pleadings affirmatively negate jurisdiction. *Id.* at 227.

The Agencies challenged only Grant's pleadings, arguing in their plea to the jurisdiction that (a) Grant lacks standing to assert claims on behalf of another, (b) the Agencies have sovereign immunity from suit and for claims for monetary damages, (c) Grant's requests for information under the Act are considered withdrawn as a matter of law, and (d) a claim under the Uniform Declaratory Judgments Act does not confer jurisdiction on the trial court. We address each ground in turn.

---

[7] *See* TEX. GOV'T CODE ANN. § 22.220(c).

## A.    Grant Has Standing to Assert Statutory Claims Under the Act.

To sufficiently plead standing, a plaintiff must allege that (1) the plaintiff has suffered a personal injury, (2) the injury is fairly traceable to the defendant's unlawful conduct, and (3) the injury is likely to be redressed by the requested relief. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012). The Agencies argue that Grant's tort claims lack either the first or second element of standing, and thus, her claims also are not redressable.

Regarding Grant's tort claims, the Agencies are correct. To meet the injury requirement, the plaintiff must plead facts demonstrating that the plaintiff, rather than a third party or the public at large, suffered the injury. *Id.* at 155 (citing *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007) (per curiam)). As the Agencies point out, Grant lacks standing to bring claims of elder abuse, because she alleges the abuse was suffered by a third party. Regarding the element of traceability, the Agencies contend that Grant's claims of retaliation are not fairly traceable to her records requests. We agree with both of those arguments. We further agree that because Grant cannot establish that she personally suffered elder abuse or retaliation as a result of the Agencies' denial of her record requests, those claims are not likely to be redressed by the declaratory and injunctive relief Grant requests. Grant does not contend otherwise.

But, as Grant correctly points out, the same is not true of her claims under the Texas Public Information Act. Her claims that the Agencies violated the Act by failing to make the information she requested available are claims that she, as the person requesting the information, is the injured party. Her claimed injury is lack of access to the information she seeks, and that injury is fairly traceable to the Agencies' alleged violation of the Act. Finally, that injury is redressable. *See* TEX.

GOV'T CODE ANN. § 552.3215 (declaratory and injunctive relief available to a person claiming to be the victim of the Act's violation).

Because Grant has standing to pursue declaratory and injunctive relief for the Agencies' alleged violations of the Act, we sustain her first issue as to those claims.

## B. The Legislature Waived the Agencies' Immunity from Suits for Declaratory and Injunctive Relief Under the Act.

Unless waived, sovereign immunity protects the State of Texas and its agencies from suit and liability. *Chambers-Liberty Ctys. Navigation Dist.*, 575 S.W.3d at 344. Because sovereign immunity implicates jurisdiction, it can be asserted in a plea to the jurisdiction. *Id.* at 345.

The legislature has waived certain governmental bodies' sovereign and governmental immunity from suits for declaratory and injunctive relief for violations of the Texas Public Information Act. *See* TEX. GOV'T CODE ANN. § 552.3215; *see also Travis v. Tex. Dep't of Pub. Safety*, No. 03-14-00314-CV, 2016 WL 4429931, *2 (Tex. App.—Austin Aug. 18, 2016, pet. denied) (mem. op.) (suit for declaratory relief challenging an OAG ruling on an open-records request). In her petition, Grant specifically pleaded, "Pursuant to GOV'T 5 Sec. 552.3215,[8] plaintiff seeks declaratory judgment and injunctive relief." Neither at trial nor on appeal have the Agencies disputed that section 552.3215 waives their immunity from suit for this relief.

We sustain Grant's second issue as to her requests for declaratory and injunctive relief for the Agencies' alleged violations of the Act.

---

[8] Grant defined "GOV'T" to mean "Texas Government Code Title." Section 552.3215 is found in Title 5 of the Texas Government Code.

## C.   Grant Did Not Withdraw Her Records Requests.

In their plea to the jurisdiction, the Agencies asserted that Grant's open-records requests must be deemed withdrawn as a matter of law because she "does not elaborate on the status of the requests." As support for this assertion, the Agencies cited Texas Government Code section 552.2615(b).

Section 552.2615 provides that if a person requesting a copy of public information will be charged more than $40, the responding agency must provide the requestor with a written itemized statement of the estimated charges. Subsection (b) states that the request is considered withdrawn if the requestor does not respond in writing to the itemized statement within ten business days. *Id.*

Although the parties have not explicitly briefed this ground on appeal, we must treat appellate issues "as covering every subsidiary question that is fairly included,"[9] and on appeal, Grant characterizes her records requests as "continuously denied." Grant similarly stated in her pleading that she sought "legal relief from . . . denials of formal [open-records] requests." This necessarily implies that the Agencies did not provide her with an itemized statement of the charges for granting the requests. Regarding HHSC, Grant further pleaded that HHSC responded without "requested documents, or cost quotes."

By such statements, Grant sufficiently alleged that the Agencies denied her records requests, and these uncontroverted factual allegations must be treated as true. Because the Agencies produced no evidence that Grant failed to timely respond to an itemized statement of costs, the trial court could not properly have granted the Agencies' plea to the jurisdiction on the ground that Grant's records requests are deemed withdrawn under Texas Government Code section 552.2615(b).

---

[9] TEX. R. APP. P. 38.1(g).

## D.  We Need Not Address Jurisdiction Under the UDJA.

In its last jurisdictional argument in the trial court, the Agencies asserted that the Uniform Declaratory Judgments Act ("UDJA")[10] does not confer jurisdiction on the trial court.[11] Because Grant has successfully established that the trial court has jurisdiction over her claims for declaratory relief under section 552.3215, it is unnecessary to consider whether another statute independently confers the same jurisdiction.

## V. THE RULE 91A MOTION TO DISMISS

Under Texas Rule of Civil Procedure 91a, "a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1. As specified in the rule, a cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. *Id.* A cause of action has no basis in fact if "no reasonable person could believe the facts pleaded." *Id.* We review the ruling on a Rule 91a motion de novo. *AC Interests, L.P. v. Tex. Comm'n on Envtl. Quality*, 543 S.W.3d 703, 706 (Tex. 2018). The Agencies moved for dismissal under Rule 91a on only two grounds.

First, the Agencies asserted sovereign immunity from suit on all of Grant's claims. For the reasons previously addressed, we reject that argument as to Grant's claims for a declaratory and injunctive relief under the Act.

---

[10] TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011.

[11] *But see Kessling*, 302 S.W.3d at 382–83 (a person seeking information under the Texas Public Information Act "could seek relief from a governmental entity's refusal to produce information by directly filing a declaratory judgment action under the UDJA against the entity" (citing *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 357–58 (Tex. 2000) and *Dominguez v. Gilbert*, 48 S.W.3d 789, 796 (Tex. App.—Austin 2001, no pet.))).

Second, the Agencies stated that, as to Grant's claims that they are complicit in ongoing elder abuse and civil rights violations, Grant "allege[d] too few facts to demonstrate a viable, legally cognizable right to relief." Grant does not challenge the portion of the trial court's judgment dismissing her claims of elder abuse and civil rights violations.

We accordingly reverse the portion of the judgment granting the Agencies' motion to dismiss on the grounds of sovereign immunity as to Grant's claims for declaratory and injunctive relief under the Act, and we leave intact the unchallenged portion of the judgment granting the motion to dismiss Grant's claims of complicity in elder abuse and in civil-rights violations.

## VI. GRANT'S REMAINING ISSUES

Grant's remaining issues concern matters over which we have no jurisdiction or that have been waived.

Her third and fourth issues concern claims Grant raised in federal lawsuits under the Americans with Disabilities Act ("ADA").[12] She identifies her third issue as "Whether Code 552 State and State Agencies have Sovereign Immunity, under the American Disability Act ('ADA'),"[13] and her fourth issue as "Whether Individuals Covered Under ADA are Denied Abuse Reporting in Texas and Texas State Agencies." There are no ADA claims in this case; those complaints instead

---

[12] *See Grant v. Seabron*, Civil No. SA-15-CA-964-RP689, 2015 WL 13546621 (W.D. Tex. Nov. 10, 2015) (magistrate judge's report and recommendation), *report and recommendation adopted*, 2016 WL 9455621 (Jan. 25, 2016), *aff'd*, Fed. Appx. 288 (5th Cir. 2017) (per curiam); *Grant v. Alperovich*, 703 Fed. Appx. 556, 557 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 179, 202 L. Ed. 2d 110 (2018); *Grant v. White*, 703 Fed. Appx. 523 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 164, 202 L. Ed. 2d 101 (2018).

[13] The Texas Public Information Act is codified as Chapter 552 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. §§ 552.001–.353. Grant refers to the Act as "Chapter 552" or "Code 552."

were raised in one or more of Grant's federal suits. Although those proceedings have no bearing on this case, the Agencies attached to their combined plea/motion to dismiss a copy of the magistrate's report from one of those federal cases, and the report referred to Grant's two other federal lawsuits.[14] Grant mistakenly concluded that by attaching the report to the plea, the Agencies had "expand[ed] the scope of this lawsuit" to incorporate her "Federal Mental and Behavioral Health American Disability Act ('ADA') *Grant v. Seabron*, et.al. rulings." The federal courts have ruled on Grant's ADA claims, and we lack jurisdiction to review those rulings. We therefore dismiss Grant's third and fourth issues for want of jurisdiction.

In her fifth issue, Grant asks, "Whether a culture of *In Forma Pauperis* and/or pro se litigant Confirmation Biasness and/or Systemic Discrimination is part of the judicial culture of the state Attorney General's Office, Travis and Judge's rulings." This is a request for an advisory opinion which we lack jurisdiction to render. *See Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam) (citing TEX. CONST. art. II, § 1). We accordingly dismiss this issue as well.

Grant phrases her sixth issue, "Whether conflict of interest, abuse of discretion, and other actions between the Appellees, and district court warrant fines and sanctions." She similarly asks in her seventh issue, "Whether Sanctions Warranted for Overt Abuse of Authority and Questions of Unethical Procedural and Judicial Practices." No rulings reviewable for abuse of discretion have been challenged on appeal, and none of Grant's remaining complaints were preserved in the trial court. *See* TEX. R. APP. P. 33.1(a), 38.1(i). Thus, her sixth and seventh issues are waived.

---

[14] *See Seabron*, 2015 WL 13546621, at *1 n.4.

## VII. Conclusion

Grant sufficiently alleged facts showing that she has standing to sue for declaratory and injunctive relief for the Agencies' alleged violations of the Texas Public Information Act. Because the legislature waived the Agencies' sovereign immunity as to these claims, we reverse the portion of the trial court's judgment dismissing these claims. *See* TEX. R. APP. P. 44.1(b). We leave intact the unchallenged portion of the judgment granting the motion to dismiss as it pertains to Grant's claims that the Agencies are complicit in elder abuse and in civil-rights violations. We affirm the remainder of the trial court's judgment, and we remand the case for further proceedings consistent with this opinion.

/s/     Tracy Christopher
         Justice

Panel consists of Justices Christopher, Spain, and Poissant.

EXHIBIT 2

# EXHIBIT 2

EXHIBIT 2

United States Department of Justice

THE UNITED STATES ATTORNEY'S OFFICE

# SOUTHERN DISTRICT *of* TEXAS

U.S. Attorneys » Southern District of Texas » News

**Department of Justice**

U.S. Attorney's Office

Southern District of Texas

FOR IMMEDIATE RELEASE                    Monday, November 30, 2015

## Skilled Nursing Facility Company Agrees to Pay More Than $3 Million to Resolve Kickback Allegations

HOUSTON – Regent Management Services L.P. has agreed to pay approximately $3.199 million to settle allegations that it received kickbacks from various ambulance companies in exchange for rights to Regent's more lucrative Medicare and Medicaid transport referrals, announced U.S. Attorney Kenneth Magidson and Gregory Demske, Chief Counsel to the Inspector General of the U.S. Department of Health and Human Services-Office of Inspector General (HHS-OIG) and Special Agent in Charge CJ Porter, of HHS-OIG, Office of Investigations, Dallas Regional Office.

Regent Management Services L.P. is headquartered in Galveston and manages 12 separately owned and operated nursing facilities including 11 in seven Texas cities.

The settlement is believed to be the first in the nation to hold accountable medical institutions (hospitals and skilled nursing facilities) rather than ambulance companies for these kind of ambulance "swapping" arrangements.

"This resolution is part of the government's emphasis on combating health care fraud throughout the district and is an example of our determination to hold those accountable for their actions," said Magidson. "Any type of improper behavior or arrangement in the industry is a serious allegation that we will not take lightly and we will pursue in order to protect the integrity of the health care system."

The Anti-Kickback Statute prohibits offering, paying, soliciting or receiving remuneration to induce referrals of items or services covered by federal health care programs, including Medicare and Medicaid. The settlement announced today resolves allegations that patients at Regent facilities received free or heavily discounted ambulance transports from various ambulance companies in exchange for Regent's referral of other lucrative Medicare and Medicaid business to those same companies. If not for this kickback arrangement, Regent would have been financially responsible for the patient transports at significantly higher rates.

"This settlement sends a message to the health care industry that both sides of a swapping arrangement can be held responsible for their improper actions, not just the entity that actually bills Medicare or Medicaid for the services," said Demske. "Any company or individual considering entering such schemes should understand that their actions may have serious legal and financial consequences."

Medicaid is funded jointly by the states and the federal government. The state of Texas paid for some of the Medicaid claims at issue and will receive approximately $533,000 of the settlement amount.

In connection with the settlement, Regent has also entered into a corporate integrity agreement (CIA) with HHS-OIG. The corporate integrity agreement obligates Regent to undertake substantial internal compliance reforms for the next five years.

"Swapping arrangements continue to be an area of concern throughout the ambulance industry," said Porter. "Such improper arrangements among providers have the potential to negatively affect patient care and need to be aggressively pursued in order to protect the integrity of the federal health care programs and their beneficiaries."

Today's announcement also marks another achievement for the Health Care Fraud Prevention and Enforcement Action Team initiative, which was announced in May 2009 by the Attorney General and the Secretary of Health and Human Services. The partnership between the two departments has focused efforts to reduce and prevent Medicare and Medicaid financial fraud through enhanced cooperation.

The settlement was the result of a coordinated effort among the U.S. Attorney's Office, HHS-OIG, HHS-OIG (Office of Counsel to the Inspector General) and the Texas Attorney General's Office. Assistant U.S. Attorney Kenneth Shaitelman handled the case on behalf of the U.S. Attorney's Office for the Southern District of Texas.

The claims resolved by this settlement are allegations only, and there has been no determination of liability.

---

**Component(s):**
USAO - Texas, Southern

Updated February 4, 2016

EXHIBIT 3

# EXHIBIT 3

EXHIBIT 3



# TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES

COMMISSIONER
John J. Specia, Jr.

September 11, 2015

Burnett Grant
8501 LAURENS LN
SAN ANTONIO, TX 78218

Cc: Debra Seabron
7311 SAWGRASS
SAN ANTONIO, TX 78244

Re: # 43493258

Dear Mr. Grant:

The Adult Protective Services (APS) program of the Texas Der          amily and Protective
Services has completed its investigation of a report that you w               of abuse, neglect, or
exploitation as defined in §48.002 of the Human Resources C              ay have provided you
with services or provided referrals to other agencies to assist in               any immediate
problem(s) and ensuring personal safety.

At this time, no further action by APS is necessary; therefore, this APS case is being closed
effective 09-11-15.

If you have any questions or concerns regarding this case, please feel free to contact me at the
number listed below. If you need to make a new report of abuse, neglect, or exploitation, please
call our statewide hotline at 1-800-252-5400 or go to our website at www.txabusehotline.org.

Sincerely,

Sandra M. Martinez
APS Specialist IV
Adult Protective Services
3635 SE Military Dr
San Antonio, TX 78223
(210) 557-7635